# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| BRANDY BURKHARDT, | |
| Plaintiff, | No. 16-CV-2093-LTS |
| vs. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | REPORT AND RECOMMENDATION |
| Defendant. | |

Plaintiff Brandy Burkhardt (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant contends the Administrative Law Judge (ALJ) erred in determining she was not disabled.

For the reasons that follow, I recommend the District Court affirm the Commissioner's decision.

## I. BACKGROUND

Claimant was born in 1975, and was 36 years old at the time of the ALJ's decision. (AR 213).[1] Claimant completed high school and is able to communicate in English. *Id*.

Claimant applied for benefits on January 28, 2013, alleging disability since November 23, 2011, due to bipolar disorder, panic attacks, manic depression, asthma, post-traumatic stress disorder and gastro-esophageal reflex disease. (AR 215-229, 259). After a hearing on March 12, 2015, the ALJ ruled against claimant on April 20, 2015.

---

[1] "AR" refers to the administrative record below.

(AR 12-32). Claimant filed a request for review, which the Appeals Council denied on July 12, 2016. (AR 1-4). Thus, the ALJ's decision is the Commissioner's final decision. *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On August 29, 2016, claimant filed a complaint in this court. (Doc. 5). The parties have briefed the issues, and on March 10, 2017, this case was deemed fully submitted. (Doc. 19). On the same day, the Honorable Leonard T. Strand, Chief United States District Court Judge, referred this case to me for a Report and Recommendation.

## II.   DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. An individual has a disability when, due to his/her physical or mental impairments, he/she "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 404.1566(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §

2

404.1520(a)(4)(i). "Substantial" work activity involves significant mental or physical activities. 20 C.F.R. § 404.1572(a). "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit. 20 C.F.R. § 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. § 404.1520(c); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers, and usual work situations; and (6) [d]ealing with changes in a routine work setting." *Id.* § 404.1521(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his/her past relevant work. If the claimant can still do his/her past relevant work, then he/she is considered

3

not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his/her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks and citations omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. 20 C.F.R. § 404.1545(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use

was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id*. If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability, and the claimant is not disabled. 20 C.F.R. § 404.1535.

### III. THE ALJ'S FINDINGS

The ALJ found:

    1. Claimant met the insured status requirements of the Social Security Act through June 30, 2016.

    2. Claimant had not engaged in substantial gainful activity since November 23, 2011, the alleged onset date.

    3. Claimant had the following severe impairments: depressive disorder, anxiety disorder, and personality disorder (borderline personality disorder).

    4. Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

    5. Claimant had the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: "she is limited to the performance of tasks learned 30 days or less, involving no more than simple work-related decisions, requiring little to no judgment, and only occasional work place changes. Furthermore, she can have no interaction with the public; no more than occasional interaction with coworkers or supervisors; and she is unable to work in close proximity to others, defined as not standing next to, or not being involved in tasks being done by others or others being involved in the tasks being done by the claimant."

    6. Claimant was unable to perform any past relevant work.

    7. Claimant was born on January 30, 1975 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

    8. Claimant had at least a high school education and is able to communicate in English.

    9. Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework

supported a finding that claimant is "not disabled," whether or not claimant has transferable job skills.

      10. Considering the claimant's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that claimant could perform.

      11. Claimant had not been under a disability, as defined in the Social Security Act, from November 23, 2011, through the date of the ALJ's decision.

(AR 16-28).

### IV.    THE SUBSTANTIAL EVIDENCE STANDARD

A court must affirm the Commissioner's decision "'if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .."). "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Wright*, 542 F.3d at 852 (quoting *Juszczyk*, 542 F.3d at 631). The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir.

2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch*, 547 F.3d at 935). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "simply because some evidence may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (internal quotation marks and citation omitted). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion." (internal citation omitted)).

## V. DISCUSSION

Claimant argues the ALJ's decision is flawed for one reason: the ALJ failed to properly weigh the medical opinions to determine if claimant met Listing 12. Claimant argues that she met Listings 12.04 (affective disorders), 12.06 (anxiety disorders), and

12.08 (panic disorders). The ALJ found that claimant's mental impairments were not sufficiently severe to meet any subcategory of Listing 12.

A claimant may establish that she is disabled by demonstrating at step three of the sequential evaluation process the existence of a medically determinable, severe impairment that meets or equals the criteria of an impairment contained in the Listings and satisfies the twelve-month durational requirement. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 404.1525, 404.1526, 416.920(a)(4)(iii), (d), 416.925, 416.926; *accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The listings consist of an index of recognized impairments that—when accompanied by specific, credible documentation with respect to severity—medically qualify an individual for disability benefits without reference to vocational factors. 20 C.F.R. Pt. 404, Subpt. P, App. 1. The claimant bears the burden of demonstrating satisfaction of a listing. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *accord Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) (citing *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)). "To meet a listing, an impairment must meet all of the listing's specified criteria." *Id.* Similarly, "[t]o establish equivalency, a claimant 'must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1960)). The purpose of the listings is to streamline the process by identifying impairments so severe that they are virtually always disabling. *Yuckert*, 482 U.S. at 153. The specific listings are addressed below.

A claimant may meet the criteria of Listing 12.04, which governs affective disorders, either by demonstrating satisfaction of the requirements of *both* Listing sections A and B or by demonstrating satisfaction of the requirements of Listing section C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (2015). Here, claimant attempts to show that she qualifies by both methods. To prove entitlement via the Listing 12.04 (A) and (B) route, claimant had to prove (1) an impairment involving (2) the medically

documented persistence of several different affective-disorder related symptoms that (3) resulted in marked limitations in at least two of four different functional categories (these are often called the B criteria and consist of activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation). *See id.* Listing 12.04(A) and (B). Alternatively, a claimant may demonstrate satisfaction of the C criteria of Listing 12.04 by showing repeated episodes of decompensation of extended duration; symptoms so severe that "even a minimal increase in mental demands or change in the environment would be predicted to cause [her] to decompensate;" or a history of "one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." *Id.* Listing 12.04(C).

Anxiety-related disorders are covered by Listing 12.06, which is similar to Listing 12.04. To qualify under Listing 12.06, claimant must meet the criteria of sections A and B or C of the Listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.06 (2015). To satisfy Listing 12.06(A), claimant must establish the existence of certain medically documented findings; a persistent irrational fear "which results in a compelling desire to avoid" its object; severe, recurrent, and unpredictable panic attacks that occur at least once per week; recurrent obsessions or compulsions resulting in marked distress; or recurrent and intrusive traumatic recollections resulting in marked distress. *Id.* Listing 12.06(A). Claimant must still satisfy either section B or C of Listing 12.06. Section 12.06(B) precisely mirrors the B criteria set forth above in relation to Listing 12.04(B). Meanwhile, claimant would satisfy section C by showing that her impairment resulted in a "complete inability to function independently outside the area of [her] home." *Id.* Listing 12.06(C).

Listing 12.08 sets forth the requirements for personality disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.08 (2015). To meet or equal Listing 12.08, a claimant must first satisfy the A criteria by demonstrating the presence of "[d]eeply ingrained, maladaptive patterns of behavior" associated with one of six different set of symptoms.

*Id.* Listing 12.08A. Claimant must then show that he or she meets the same B criteria that apply to the other mental impairment listings. *Id.* Listing 12.08(B).

The ALJ found that claimant did not satisfy Listing 12.04, 12.06, or 12.08 because she did not have marked limitations in at least two B criteria categories and because she could not satisfy the C criteria for either Listing 12.04 or 12.06 (Listing 12.08 does not include C criteria) (AR 18-20). Claimant argues that she has an extreme limitation in social functioning (as opposed to marked limitations in at least two different B criteria categories). (Doc. 18, at 6-7, 9-10). An "extreme" limitation signifies that the individual is "not able to function" in a given area. *Id.* The C criteria of Listings 12.04 and 12.06 will be addressed separately.

1. The B Criteria

The ALJ found that claimant had only mild restriction in her daily activities; moderate difficulties with social functioning; moderate difficulties with concentration, persistence, or pace; and no episodes of decompensation of extended duration. (AR 19). With respect to social functioning, the B criteria category that claimant contests—the ALJ acknowledged that claimant alleged severe difficulties. (AR 19). Nevertheless, the ALJ pointed out that claimant had "generally demonstrated normal mood and affect to her treating providers and ha[d] not been noted to have difficulties with social interaction on exam," despite her subjective complaints. (AR 19, 22, 402-403, 405, 410, 414, 416-417, 427, 430, 436, 439, 488, 537, 541, 584). Although claimant was hospitalized in January 2013 after threatening to kill her husband, the ALJ pointed out that claimant had been using amphetamines and not taking her medications. (AR 19, 22, 378, 408). The ALJ also acknowledged another exacerbation that was followed by quick improvement. (AR 22, 416-417, 422-423).

The ALJ then cited evidence that claimant shopped in stores regularly, interacted with friends and family on a daily basis, and worked part-time. (AR 19, 254, 270-272, 280). Consequently, the ALJ found that claimant was "for the most part . . . capable of

10

interacting independently, appropriately, effectively and on a sustained basis." (AR 19). The ALJ also explicitly relied on the fact that Russell Lark, Ph.D., and Dee Wright, Ph.D., opined that claimant had moderate social limitations. (AR 25, 79-80, 106). *See* Social Security Ruling ("SSR") 96-6p (July 2, 1996), *Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants*, available at 1966 WL 374180, at *3 (permitting reliance on state-agency experts' opinions). Similarly, the case law instructs that an ALJ may rely on "other" opinion evidence provided that the ALJ first permissibly rejects the treating-source evidence of record. *See Smith v. Colvin*, 756 F.3d 621, 626-27 (8th Cir. 2014); *see also Jones v. Astrue*, 619 F.3d 693, 971 (8th Cir. 2010) (requiring only that the record contain "some medical evidence" supporting the ALJ's decision); *Heino v. Astrue*, 578 F.3d 873, 879-80 (8th Cir. 2009) (holding ALJ could rely on other opinion evidence after properly discounting treating-physician opinions); *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004) (permitting reliance upon state-agency experts as part of record); 20 C.F.R. §§ 404.1527(e), 416.927(e) (same). More specifically with respect to the issue in this case, in *Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013), the Eighth Circuit Court of Appeals held that an ALJ properly relied on opinions from state-agency experts' about claimant's B criteria limitations.

Claimant asserts that she has an extreme limitation in social functioning "as demonstrated by her inability to get along with employers as well as family members and going so far as to want to hurt them." (Doc. 18 at 7). An "extreme limitation in social functions" means claimant must show that she is wholly unable to function socially; it is not enough for her to attempt to show that she is merely "seriously limited," as is required to show a marked limitation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2). Coupled with the standard of review, claimant must show that the evidence compelled the ALJ to find extreme—as opposed to marked—limitations. The ALJ specifically acknowledged that claimant felt the urge to injure her husband, but reasonably pointed

11

out that she had such feelings while using amphetamines during a period of noncompliance with her medication regimen. (AR 19, 22, 378, 408). Also, the ALJ then highlighted evidence showing that claimant remained able to function socially. (AR 19, 22, 270-272, 280, 402-403, 405, 410, 414, 416-417, 427, 430, 436, 439, 488, 537, 541, 584). The ALJ ultimately accommodated this symptom by precluding claimant from working with large crowds in the RFC assessment. (AR 20). The ALJ also found that Claimant could have no interaction with the public; no more than occasional interaction with coworkers and supervisors; and could not work in close proximity with others. (AR 20).

Claimant argues that the ALJ erred in referencing the lack of any medical opinion evidence indicating her impairments were marked or extreme. (Doc. 18, at 13). But Claimant bears the burden of proof. *See Carlson*, 604 F.3d at 593. Furthermore, the ALJ relied upon the state-agency opinions from Dr. Lark and Dr. Wright that claimant did not have marked or extreme limitations. (AR 25).

Claimant also argues that her Global Assessment of Functioning (GAF) scores ranged significantly, reflecting her volatile functioning. (Doc. 18, at 13). Claimant's GAF scores were generally in the 50s, however, connoting moderate limitations. (AR 487, 488, 489, 490, 501, 542, 543). *See Goff*, 421 F.3d at 791 (GAF ranging between 51 and 60 inconsistent with extreme limitations). The GAF score of 27 that claimant references occurred only once during her exacerbation on amphetamines when she was not properly medicated, an occurrence the ALJ specifically acknowledged. (AR 19, 382-383).

### 2. The C Criteria

Claimant also argues that she meets the C criteria of Listings 12.04 and 12.06. (Doc. 18, at 7, 9). With respect to Listing 12.04(C), claimant asserts that she has had ongoing treatment for two years and that she has not adapted to changes in environment or demands that are not part of her every-day life, as evidenced by her inability to get

12

along with others and hold employment. (Doc. 18, at 7). Claimant argues that she meets the C criteria of Listing 12.06 because she has been receiving treatment for two years that "at times diminishes the symptoms and signs of her mental disorder." (Doc. 18, at 9).

The C criteria are not applicable in this case. With respect to the version of the Listings operative at the time of the ALJ's decision, Listing 12.04(C) required claimant to show repeated episodes of decompensation of extended duration; symptoms so severe that "even a minimal increase in mental demands or change in the environment would be predicted to cause [her] to decompensate"; or a history of "one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." 20 C.R.R. Pt. 404, Subpt. P, App 1, § 12.04(C) (2015). Section 12.06(C) requires claimant to show "complete inability to function independently outside the area of [her] home." *Id.* § 12.04(C) (2015). Claimant did not meet either burden.

Claimant's difficulties with her employers may show that she has functional limitations, which the ALJ acknowledged and accommodated with a highly restrictive RFC assessment (AR 20), but they do not show the sort of pervasive inability to function outside of a carefully controlled environment contemplated by the Listings. Substantial evidence supports the ALJ's findings that claimant did not experience repeated episodes of decompensation of extended duration, did not function without a highly supportive living environment, and that she was not completely unable to function outside the home. (AR 20, 270-272, 280, 402-403, 405, 410, 414, 416-417, 427, 430, 436, 439, 488, 537, 541, 584). See *Johnson v. Colvin*, 788 F.3d 870, 873 (8th Cir. 2015) (explaining that the "mere fact that some evidence may support a conclusion opposite to that reached by the Commissioner does not allow [a] Court to reverse the decision of the ALJ") (citation omitted). Pursuant to the version of the listings in effect at the time of the ALJ's decision, claimant must also show that, despite treatment, she has a minimal ability to function

outside the home. 20 C.F.R. Pt. 404, Subpt. P, App 1, Listing 12.06(C)(2015). As discussed above, the ALJ relied on evidence showing that claimant was able to shop, attend appointments, and even engage in part-time work. (AR 19-20, 22, 254, 270-272, 280). Considering everything, the ALJ properly weighed the medical opinions in determining that claimant did not meet Listing 12.

### *VI. CONCLUSION*

For the reasons set forth herein, I respectfully recommend the District Court **affirm** the Commissioner's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 3rd day of April, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa