# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| BRANDY BURKHARDT,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. C16-2093-LTS<br><br>**MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

This case is before me on a Report and Recommendation (R&R) filed by the Honorable C.J. Williams, Chief United States Magistrate Judge. *See* Doc. No. 20. Judge Williams recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner). Neither party has objected to the R&R. The deadline for such objections has expired.

## II. APPLICABLE STANDARDS

### A. *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of

the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v.*

*Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

B.  *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge

3

to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III.   THE R&R

Burkhardt applied for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act) on January 28, 2013. She alleged she became disabled on November 23, 2011, due to bipolar disorder, panic attacks, manic depression, asthma, post-traumatic stress disorder and gastro-esophageal reflux disease. After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation and found that Burkhardt was not disabled as defined in the Act. Burkhardt argues the ALJ erred in determining that she was not disabled because the ALJ did not properly weigh the medical opinions to determine if Burkhardt met Listing 12.04 (affective disorders), 12.06 (anxiety disorders) or 12.08 (panic disorders). *See* Doc. No. 16.

Judge Williams first discussed the requirements for meeting the various Listings. He noted that the ALJ found Burkhardt did not satisfy Listing 12.04, 12.06 or 12.08 because she did not have marked limitations in at least two B criteria categories[1] and

---

[1] The relevant B criteria categories include: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06 and 12.08 (2015). The Listings have since been amended so that the B criteria now require a claimant to prove an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

1. Understand, remember, or apply information
2. Interact with others
3. Concentrate, persist, or maintain pace
4. Adapt or manage oneself.

could not satisfy the C criteria[2] for either Listing 12.04 or 12.06 (Listing 12.08 does not include C criteria). *See* Doc. No. 20 at 10-11 (citing AR 18-20).

With regard to the B criteria, Judge Williams noted that the ALJ found only mild restriction in Burkhardt's daily activities, moderate difficulties with social functioning, moderate difficulties with concentration, persistence or pace and no episodes of decompensation of extended duration. However, Burkhardt argues that she has an extreme limitation as to social functioning, meaning she essentially cannot function in this area. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2) (2017) (defining extreme limitation as "not able to function in this area independently, appropriately, effectively, and on a sustained basis."). As noted *supra* n.1, an extreme limitation would not satisfy the B criteria in the applicable 2015 regulations.

---

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06 and 12.08 (2017). These amendments are not retroactive. Therefore, references to the Listings in this order refer to the Listings effective in 2015, which the ALJ applied in her decision and Judge Williams in his R&R.

[2] The C criteria of Listing 12.04 require the claimant to show:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.04(C) (2015). Listing 12.06(C) requires the claimant to show "complete inability to function independently outside the area of one's home." *Id.* § 12.06(C) (2015).

Judge Williams noted that the ALJ considered Burkhardt's allegation of severe difficulties with social functioning, but found she "generally demonstrated normal mood and affect to her treating providers and ha[d] not been noted to have difficulties with social interaction on exam." Doc. No. 20 at 10 (citing AR 19, 22, 402-403, 405, 410, 414, 416-17, 427, 430, 436, 439, 488, 537, 541, 584). While Burkhardt was hospitalized in January 2013 after threatening to kill her husband, the ALJ noted she was off her medication at this time and had been using amphetamines. *Id.* (citing AR 19, 22, 378, 408). The ALJ also reasoned that Burkhardt had quickly improved on other occasions when her symptoms were exacerbated. *Id.* (citing AR 22, 416-17, 422-23). She regularly shopped in stores, interacted with friends and family on a daily basis and worked part-time. *Id.* (citing AR 19, 254, 270-72, 280). Finally, the ALJ relied on the opinions of state agency medical consultants, Russell Lark, Ph.D. and Dee Wright, Ph.D., who concluded that Burkhardt had moderate limitations in social functioning after reviewing her medical records.

Burkhardt argues that the ALJ's determination regarding her social functioning is not supported by substantial evidence because she has a demonstrated inability to get along with employers and family members, even going so far as wanting to hurt them. Judge Williams noted that the ALJ considered this evidence but found it mitigated by the fact that Burkhardt had been using amphetamines at this time and was noncompliant with her medication. Second, the ALJ highlighted evidence showing that Burkhardt was able to function socially. *Id.* at 12 (citing AR 19, 22, 270-72, 280, 402-03, 405, 410, 414, 416-17, 427, 430, 436, 439, 488, 537, 541, 584). Third, Judge Williams noted that the ALJ accommodated Burkhardt's limitations in social functioning by precluding Burkhardt from working with large crowds in the residual functional capacity (RFC) assessment. The ALJ also found she could have no interaction with the public; no more than occasional interaction with coworkers and supervisors; and could not work in close proximity to others. *Id.* (citing AR 20).

Burkhardt argues the ALJ erred by stating no medical opinion evidence indicated her impairments were marked or extreme. Judge Williams noted that claimant bears the burden of proof and, in any event, the ALJ relied on the opinions of the state agency medical consultants who found Burkhardt did not have marked or extreme limitations based on their review of Burkhardt's medical records. *Id*.

Finally, Burkhardt argues her Global Assessment of Functioning (GAF) scores support extreme limitations because they vary widely in range. Judge Williams noted that Burkhardt's GAF scores were generally in the 50s, which are associated with moderate limitations. Her GAF score of 27 occurred while she was off her medication and on amphetamines, which the ALJ addressed. *Id.* (citing AR 19, 382-83). Therefore, with regard to the B criteria, Judge Williams found the ALJ's decision was supported by substantial evidence. *Id*.

With regard to the C criteria for Listings 12.04 and 12.06, Burkhart argues she has been in treatment for two years and has not adapted to changes in environment or demands that are not part of her everyday life. She states this is evidenced by her inability to get along with others and hold employment. She also argues that under Listing 12.06, her treatment for two years "at times diminishes the symptoms and signs of her mental disorder." *Id.* at 13 (citing Doc. No. 18 at 9).

Judge Williams noted the C criteria were not applicable in this case. Listing 12.04(C) requires a claimant to show repeated episodes of decompensation of extended duration; symptoms so severe that "even a minimal increase in mental demands or change in the environment would be predicted to cause [her] to decompensate;" or a history of "one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." *Id.* (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C) (2015). He noted Listing 12.06(C) requires the claimant to show a "complete inability to function independently outside the area of [her] home." *Id*.

7

Judge Williams acknowledged the evidence indicating that Burkhardt had difficulties with her employers, but noted the ALJ had accommodated these limitations with a highly restrictive RFC assessment. Indeed, the evidence did not show she was completely unable to function outside of a carefully controlled environment as contemplated by the Listings. The ALJ cited evidence that Burkhardt was able to shop, attend appointments and engage in part time work. Therefore, Judge Williams found that substantial evidence supported the ALJ's findings that Burkhart did not meet the C criteria in that she did not experience repeated episodes of decompensation of extended duration, and was able to function without a highly supportive living environment. *Id*.

For these reasons, Judge Williams recommends that the ALJ's decision be affirmed. *Id*. at 14.

## IV. DISCUSSION

Because the parties did not object to the R&R, I have reviewed it for clear error. Judge Williams applied the appropriate legal standards in concluding the ALJ's decision was supported by substantial evidence. He correctly found the ALJ committed no error in finding Burkhardt did not have an impairment or combination of impairments that met or medically equaled of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 based on the record as a whole. Therefore, I find no error – clear or otherwise – in his recommendation. As such, I adopt the R&R in its entirety.

## V. CONCLUSION

For the reasons set forth herein:

1. I **accept** Judge Williams' R&R (Doc. No. 20) without modification. *See* 28 U.S.C. § 636(b)(1).

2. Pursuant to Judge Williams' recommendation:

a. The Commissioner's determination that Burkhardt was not disabled is **affirmed.**
b. Judgment shall enter in favor of the Commissioner and against the plaintiff.

**IT IS SO ORDERED.**

**DATED** this 30th day of June, 2017.

_____
Leonard T. Strand, Chief Judge